763 N.W.2d 373 (2009)
277 Neb. 404
Michael ALBERT, appellee,
v.
HERITAGE ADMINISTRATION SERVICES, INC., appellant.
No. S-07-1044.
Supreme Court of Nebraska.
March 20, 2009.
Tim Engler, of Harding & Shultz, P.C., L.L.O., Lincoln, for appellant.
Paul E. Galter, of Butler, Galter, O'Brien & Boehm, Lincoln, for appellee.
*374 WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
In this breach of contract action, Heritage Administration Services, Inc. (Heritage), appeals the judgment entered after trial by the district court for Lancaster County awarding Heritage's former agent, Michael Albert, damages of $76,230, covering the period May 1, 2004, through March 22, 2005. Relying on a provision of the "Agent's Agreement," "VIII. DISCONTINUANCE OF PROGRAM" (article VIII), Heritage claims that damages should have been limited to a 30-day period beginning in May 2004. We conclude that article VIII does not control this case and that the district court's findings are not clearly wrong. Accordingly, we affirm.

STATEMENT OF FACTS
Heritage was formed in 1999 by Rod Beery. Heritage under-wrote automobile service and warranty contracts and performed claims administration for those contracts. Heritage used agents to market its programs to automobile dealerships.
Albert, who was a personal acquaintance of Beery, began working as an agent of Heritage in 1999. Albert and Heritage entered into an "Agent's Agreement" dated April 19, 1999 (hereinafter the Agreement), pursuant to which Albert would market various Heritage vehicle service contract programs to dealerships. The Agreement contained a provision, "V. TERMINATION WITHOUT CAUSE" (article V), which stated in part that the "Agreement may be canceled upon 30 days notice by either party." The Agreement also contained article VIII, which stated in part that "Heritage may discontinue or withdraw from [Albert] any of its programs upon 30 days written notice." At issue in this appeal is the "Engine for Life" program and specifically the commission Albert was to receive due to the sale of Engine for Life program contracts to an auto dealer, Anderson Ford.
In 2003, Heritage began a new warranty program called Engine for Life. On February 25, 2003, Albert and Heritage signed a document titled "HERITAGE AGENT AGREEMENT AMENDMENT ENGINE FOR LIFE PROGRAM AUTHORITY" (the Amendment). By its terms, the Amendment was to attach to and thereby become a part of the Agreement. The Amendment authorized Albert to promote and sell the Engine for Life program products to "auto dealers" on Heritage's behalf. The Amendment does not list or otherwise limit the auto dealers to which Albert could sell Engine for Life program products. In the Amendment, the parties agreed that all other terms and conditions of the Agreement would remain unchanged. Beery assigned Albert to be the agent responsible for managing Heritage's Engine for Life program sales to Anderson Ford. The evidence shows that up to the time in dispute, pursuant to an oral agreement, Albert was paid a $30 commission for every Engine for Life program contract sold to Anderson Ford.
In April 2004, the Heritage board of directors removed Beery from his position as president and chief operating officer. In May 2004, interim management was brought in to take charge of operations. The interim management determined that the Anderson Ford account should be removed from Albert and given to another agent. Albert stopped receiving commissions on the sale of Engine for Life program products to Anderson Ford in May 2004.
*375 In challenging the district court's findings, Heritage refers this Court to certain testimony from the trial, not repeated here, which it claims supports its argument on appeal that it gave Albert oral notice in May 2004 and thereby limited Albert's commissions to 30 days thereafter under article VIII. As the district court found and our review of the record shows, Albert testified that in May 2004, he had a conversation with a Heritage employee who was responsible for administering commissions paid to agents. That employee told Albert that he had learned that the new management would no longer pay Albert commissions for sales to Anderson Ford. Albert then spoke with Steve Goodrich, who was in a management position with Heritage. Albert told Goodrich that he had heard that he would no longer be paid such commissions. Albert testified that instead of terminating the agreement by which Albert had been the sales agent for the Anderson Ford account, Goodrich told Albert that Anderson Ford was "not going to have Engine for Life any more." Albert testified that Goodrich specifically denied that another agent was being given the account and was going to receive the Engine for Life program sales commissions. Albert further testified that he proposed that he could try to sell the Engine for Life program products to another Ford dealership and that Goodrich indicated that Albert could continue to sell the program's products and said "sure." Peter Knolla, a member of Heritage management, testified at trial that in May 2004 a decision was "made to discontinue paying. . . Albert for Engine for Life contracts involving Anderson Ford" and to give the account to another agent. Knolla also testified that at that time, the interim management did not realize that Albert had a written agreement with Heritage.
In February 2005, the management of Heritage learned of the Agreement and the Amendment. Heritage provided Albert a written notice dated February 14, 2005, that it was terminating the Agreement pursuant to article V. The notice stated that termination would be effective 30 days from receipt of the letter. A certified receipt indicated that the letter was delivered to Albert on February 22.
Albert filed the present action on September 2, 2005. Albert alleged that in May 2004, Heritage wrongfully discontinued payment to him of the commissions on the Engine for Life program products sold through Anderson Ford. Albert sought, inter alia, judgment in the amount of $30 for each of the thousands of Engine for Life contracts which continued to be sold through Anderson Ford since May 2004.
Following a bench trial, the court entered an order dated August 31, 2007, setting forth its findings of fact and conclusions of law. In the order, the court noted that "[w]hen [Albert] contacted Heritage concerning the rumor [regarding Anderson Ford], he was informed that the Anderson Motor contract had been terminated. In reality it had not, and another agent began receiving commissions for the Anderson contract." With regard to written notice of termination of the Agreement, the court made the following finding:
On February 14, 2005, Heritage sent actual written notice to [Albert] informing him that his Agent's Agreement was being terminated. This notice was received on February 22, 2005. Thus, the court finds that plaintiff is entitled to commissions for contracts sold, pursuant to the Engine for Life program, through March 22, 2005.
The court found that Albert was entitled to a commission of $30 for each of the 2,541 Engine for Life program contracts that the evidence established were purchased through Anderson Ford between *376 May 1, 2004, and March 22, 2005. The court therefore entered judgment in favor of Albert in the amount of $76,230.
Heritage appeals.

ASSIGNMENTS OF ERROR
Heritage asserts that the district court erred in (1) failing to find that Heritage gave Albert oral notice in May 2004 that it was withdrawing the Anderson Ford Engine for Life "account" from him as Heritage was entitled to do under article VIII of the Agreement and (2) awarding damages for the period ending 30 days after written notice was given in February 2005 rather than limiting damages to the period ending 30 days after oral notice that Heritage was withdrawing the Anderson Ford Engine for Life "account" given in May 2004 as Heritage was entitled to do under article VIII of the Agreement.

STANDARDS OF REVIEW
A suit for damages arising from breach of a contract presents an action at law. Magistro v. J. Lou, Inc., 270 Neb. 438, 703 N.W.2d 887 (2005). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Aon Consulting v. Midlands Fin. Benefits, 275 Neb. 642, 748 N.W.2d 626 (2008).
The interpretation of a contract involves a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 275 Neb. 310, 746 N.W.2d 672 (2008).

ANALYSIS
Our analysis on appeal is controlled by the assignments of error which are asserted by Heritage. In challenging the district court's rulings, Heritage refers us exclusively to article VIII of the Agreement, which provides in its entirety as follows:

VIII. DISCONTINUANCE OF PROGRAM
Heritage may discontinue or withdraw from Representative any of its programs upon 30 days written notice. If such discontinuance or withdrawal is required by any State, Federal, or other legal authority, then Heritage shall provide 10 days written notice to Representative of the discontinuance of such Program.
Heritage claims that the district court's rulings were in error under article VIII. In considering the assignments of error as framed by Heritage, we therefore focus on whether the district court's findings of facts after trial are either clearly wrong, see Aon Consulting, supra, or whether its conclusions of law amount to error as a matter of law under article VIII, see State ex rel. Bruning v. R.J. Reynolds Tobacco Co., supra. Upon review, we determine that the court's findings are supported by the record and are not clearly wrong. Further, we conclude that the conclusions of law are not in error.
Heritage claims on appeal that it gave Albert "verbal notice in May of 2004 that he would no longer be the company's agent for the Anderson Ford [Engine for Life] account." Brief for appellant at 11 (emphasis supplied). Heritage asserts that such alleged notice was given and effective pursuant to article VIII, the discontinuance of program provision of the Agreement. Heritage claims that the damages awarded to Albert should have been limited to the period ending 30 days after such oral notice was given. We reject this argument.
*377 In the Agreement, there are two provisions requiring notice to Albert that are arguably relevant in this case. The first is a provision in article V for termination of the Agreement without cause, which states that the "Agreement may be canceled upon 30 days notice by either party." The second is a provision in article VIII, upon which Heritage relies in this appeal, which states that "Heritage may discontinue or withdraw from [Albert] any of its programs upon 30 days written notice." The district court found, and neither party disputes, that the written notice Heritage provided to Albert in February 2005 was actual notice as required under the termination without cause provision in article V that allowed either party to cancel the Agreement upon 30 days' notice. Heritage, however, asserts that its communications in May 2004 were effective termination under article VIII.
With regard to the communications in May 2004, neither party claims they were written. The court found that in May 2004, "[w]hen [Albert] contacted Heritage concerning the rumor [regarding Anderson Ford], he was informed that the Anderson Motor contract had been terminated. In reality it had not, and another agent began receiving commissions for the Anderson contract." Elsewhere, the court found that 2,541 Engine for Life program contracts were purchased by Anderson Ford between May 1, 2004, and March 22, 2005.
The evidence in this case supports the court's factual findings in this regard, and they are not clearly wrong. Albert testified that in May 2004, he heard a rumor from a Heritage employee that Heritage would no longer pay Albert commissions with respect to sales to Anderson Ford. Albert further testified that he spoke with Goodrich, a member of Heritage management, regarding the rumor. Goodrich told Albert that the reason Albert would no longer receive the commissions was because Anderson Ford would no longer be participating in the Engine for Life program. Goodrich specifically denied to Albert that the commissions would be going to a different agent.
There is no evidence that the Engine for Life program in its entirety was discontinued or that the program was withdrawn from Albert. To the contrary, the evidence indicates that the Engine for Life program continued to be sold and that Albert was permitted to sell the program elsewhere. In this regard, we note that Goodrich assented to Albert's suggestion that Albert should continue to sell the Engine for Life program to another automobile dealer. Heritage did not present evidence to contradict Albert's testimony regarding the oral May 2004 communications between Albert and Heritage management. For completeness, we note that Knolla, another member of Heritage management, testified that Heritage decided in May 2004 to stop paying Anderson Ford commissions to Albert and to give the account to another agent; however, there was no testimony that Heritage communicated such decision to Albert in May 2004.
Article VIII of the Agreement upon which Heritage relies provides that Heritage may "discontinue or withdraw from [Albert] any of its programs upon 30 days written notice." (Emphasis supplied.) The evidence shows that Heritage did not communicate to Albert in May 2004 that it was discontinuing the Engine for Life program in its entirety or that it was withdrawing the Engine for Life program from Albert. Even if Heritage's intention in May 2004 was in fact to withdraw the program from Albert and to give the program to another agent, there is no evidence that Heritage communicated such intention to Albert in May 2004. Further, *378 none of the communications at issue in May 2004 were in writing.
Because Heritage did not communicate to Albert in writing in May 2004 that it was discontinuing the Engine for Life program in its entirety or withdrawing the program from Albert in particular, we conclude that Heritage's first assignment of error claiming that the district court failed to find effective termination under the terms of article VIII of the Agreement is without merit.
Heritage's second assignment of error and arguments regarding the award of damages for greater than 30 days claim that Heritage gave Albert oral notice in May 2004 that it was with-drawing the Engine for Life "account" and that such notice effectively complied with the requirements of article VIII of the Agreement, thereby limiting Albert's damages to 30 days. Heritage's argument is not supported by the evidence or article VIII of the Agreement, and we determine that Heritage's second assignment of error is without merit.
As noted above, article VIII covers the withdrawal of a "program" which an agent may sell, as opposed to merely the withdrawal of one "account" to which a program may be sold as urged by Heritage. Further, article VIII requires that withdrawal of a program from an agent such as Albert be in writing. The evidence on which Heritage relies regarding the withdrawal of the Anderson "account" orally is of no legal significance under article VIII, which instead deals with withdrawal of a "program." The evidence indicates that Albert was still free to sell the Engine for Life program to other auto dealers, and therefore, the "program" was not withdrawn from Albert and article VIII does not apply or afford relief to Heritage. Thus, as noted above, the evidence does not support the assertions of Heritage that under article VIII the district court erred in awarding damages in excess of 30 days after May 2004.

CONCLUSION
We determine that the district court's findings are not clearly wrong and the conclusions of law are not in error under article VIII of the Agreement. We, therefore, conclude that the entry of judgment in favor of Albert in the amount of $76,230 is correct under the facts and controlling agreements. We affirm the judgment of the district court.
AFFIRMED.
HEAVICAN, C.J., not participating.