767 N.W.2d 751 (2009)
278 Neb. 1
Bruce EVERTSON and Perry Van Newkirk, appellees,
v.
The CITY OF KIMBALL et al., appellants.
No. S-08-524.
Supreme Court of Nebraska.
July 2, 2009.
*755 Randall L. Goyette and Andrea D. Snowden, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellants.
Donald J.B. Miller, of Matzke, Mattoon & Miller, L.L.C., L.L.O., for appellees.
William F. Austin, of Erickson & Sederstrom, P.C., Omaha, for amicus curiae League of Nebraska Municipalities.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
After receiving complaints alleging that police officers in Kimball, Nebraska, were engaged in racially profiling Hispanics, the mayor hired a private investigator to investigate. Later, the appellees, Kimball citizens Bruce Evertson and Perry Van Newkirk, brought a mandamus action to *756 compel the City of Kimball, its mayor, and its city clerk (collectively the City) to disclose the investigative report. The City refused. It claimed that the report was verbal and that it had not paid for or requested a written report. It also claimed that it did not have to disclose any materials because the records fell within exemptions under the public records statutes.[1] The district court disagreed and ordered the City to disclose the records as redacted.
This appeal presents two questions:
1. Do a private investigator's written data and reports constitute public records under § 84-712.01 when the public body contractually delegated its investigative authority to the private investigators?
2. Are these requested materials, even if public records, exempt from disclosure under three separate provisions of § 84-712.05?

II. BACKGROUND
In July 2005, Gregory Robinson, the mayor of Kimball, attended a meeting with members of Forward Kimball Industries, a private economic development corporation. At the meeting, members complained that the City's police department was targeting the members' Hispanic or minority employees. Newkirk and Evertson were business partners; Evertson attended the meeting. Most of the complaints focused on Officer Sharon Lewis, and the members demanded that Robinson terminate Lewis' employment.
Because of the complaints made at the meeting, Robinson put Lewis on administrative leave and decided to investigate. The Nebraska State Patrol declined to conduct the investigation, and Robinson did not ask the sheriff's office because he wanted an independent investigator from outside the city. So Robinson hired Robert Miller, an attorney and investigator from Colorado. Miller then hired Bill Tidyman and Aaron Sanchez to help.
Robinson instructed the investigators to mainly investigate the specific allegations against Lewis and also to review the police department's treatment of minorities. In November 2005, Robinson and the city attorney met with the investigators. The team's verbal report confirmed some earlier allegations. The verbal report resulted in the City's terminating Lewis' employment. Robinson stated that he had not seen, nor did the investigation team give him, any notes or copies. And Robinson declined to order a final written report documenting the team's recommendations. He stated that the report would have cost $5,000 to $6,000 and that the investigation costs had already exceeded expectations. The City paid about $26,000 for the investigation.
The appellees knew from conversations with Sanchez that he was preparing a report for Tidyman. The appellees demanded a copy of the Tidyman report, in part, to defend themselves against Lewis' federal lawsuit. The suit alleged a conspiracy to terminate Lewis' employment, and the appellees believed that the report would show that no conspiracy existed. The City responded that no report meeting the appellees' description existed.

1. APPELLEES FILE A MANDAMUS PETITION
In March 2006, the appellees sought a writ of mandamus ordering the City to disclose the Tidyman report. The City answered that it had only a verbal report and that it had not requested or paid for a written report. It also affirmatively alleged exemptions under § 84-712.05(4), (5), and (7) of the public records statutes.
*757 Later, in response to a deposition subpoena, Tidyman elected to file with the court the sealed documents in his possession and an accompanying affidavit. The court had ordered the investigators to seal any discovered reports and submit it to the court. It further ordered that the parties should not review it until the court decided whether to order disclosure.
At trial on the mandamus petition, the court stated that Tidyman's submitted documents contained his interview notes that he had typed for Miller but did not include a report that he would have provided to the City. Later, the appellees discovered that Sanchez had produced a final written report for Miller. His report summarized his findings based on 30 or more interviews and the City's arrest statistics. He agreed to mail his sealed report to the court for review.

2. COURT DETERMINES THAT DOCUMENTS ARE PUBLIC RECORDS
In January 2008, the court issued an order directing the City to produce the Sanchez report. It found that Miller had hired Tidyman & Associates to conduct the investigation and that Tidyman & Associates had hired Sanchez to do the interviewing. The court further found that because of their investigation, the City terminated Lewis' employment. The court also found that the City had falsely asserted that no written report existed. The court noted that the documents were produced as part of the investigation. It stated that the City had paid for the investigative documents, received the information, and knew that the documents existed. It concluded that the documents were therefore public records and that none of the raised statutory exemptions applied.

3. COURT PUBLICIZES SANCHEZ REPORT IN ITS ORDER TO DISCLOSE AND GIVES APPELLEES ACCESS TO ALL DOCUMENTS
The court ordered the City to produce Sanchez' written report. It also redacted names from the Sanchez report and attached it to its order. It also ordered that upon request, the appellees and their counsel could review in chambers other documents submitted by Tidyman and Sanchez, because Lewis had sued them in an action arising from the facts surrounding the investigation. Following this order, the court granted the appellees' motion for attorney fees.

III. ASSIGNMENTS OF ERROR
The City assigns that the district court erred in (1) determining that the documents the appellees sought were public records belonging to the City; (2) failing to determine that § 84-712.05(4), (5), and (7) exempted the documents from disclosure; and (3) awarding attorney fees and finding that $23,192.51 in attorney fees was a reasonable amount.

IV. STANDARD OF REVIEW
[1-3] Justiciability issues that do not involve a factual dispute present a question of law.[2] And statutory interpretation is a question of law.[3] We resolve questions of law independently of the determination reached by the court below.[4]
[4-6] Mandamus is a law action, and we have defined it as an extraordinary *758 remedy, not a writ of right.[5] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict. We will not disturb those findings unless they are clearly erroneous.[6] Whether to grant a writ of mandamus is within the trial court's discretion.[7]

V. ANALYSIS

1. MOOTNESS
[7] The appellees contend that the court's order that disclosed the investigative materials renders the appeal moot because the court published the contents of the Sanchez report and granted them access to the other requested documents. They contend that the public interest exception to the mootness doctrine does not apply because the recurrence of this fact will likely not occur again. The City disagrees. It contends that we have an opportunity to prevent further disclosure of these records and give guidance to public bodies faced with similar requests. They argue we should apply the public interest exception.
[8, 9] A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome.[8] Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.[9]
[10, 11] But under the public interest exception, we may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination.[10] And when determining whether a case involves a matter of public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.[11]
This appeal presents valid reasons for applying the public interest exception. As these facts show, we can foresee a public body hiring a private investigator to conduct an internal investigation of its officials' or employees' activities to eliminate any appearance of impartiality. Giving guidance to courts and public bodies for future cases warrants our review of the issues. Thus, the case falls within the public interest exception.

2. BURDENS OF PROOF
[12, 13] A party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records; (2) the document sought is a public record as defined by § 84-712.01; and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712.[12] If the requesting *759 party satisfies its prima facie claim for release of public records, the public body opposing disclosure must show by clear and convincing evidence that § 84-712.05 or § 84-712.08 exempts the records from disclosure.[13] Regarding the appellees' burden of proof as the requesting parties, the parties dispute only the second element.

3. WHAT CONSTITUTES A PUBLIC RECORD?
[14] The City contends that the court erred in finding that the documents sought by the appellees were public records. It argues that the evidence showed that the documents did not belong to the City. It mainly relies on Forsham v. Harris,[14] a U.S. Supreme Court decision applying the federal Freedom of Information Act (FOIA).[15] Under Forsham and other Supreme Court interpretations of the federal act, an agency must create the records or exercise its right to obtain them before a requesting party can obtain an order for disclosure.
The appellees counter that they can distinguish Forsham. They contend that physical possession presents only one factor indicating ownership of records. They argue that requiring physical possession would permit governmental entities to easily avoid disclosing records by simply declining to take possession of them. So the initial question we address is whether Nebraska's statutes require physical possession of the requested materials.

(a) Nebraska's Definition of Public Records
Section 84-712.01(1) defines public records in Nebraska:
[P]ublic records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing. Data which is a public record in its original form shall remain a public record when maintained in computer files.
The reference to "data" in the last sentence shows that the Legislature intended public records to include a public body's component information, not just its completed reports or documents. In addition, § 84-712.01(3) requires that courts liberally construe the public records statutes for disclosure when a public body has expended its funds.
The City argues that the "of or belonging to" language in § 84-712.01 means a public body must have ownership of, as distinguished from a right to obtain, materials in the hands of a private entity. But the City's narrow reading of the statute would often allow a public body to shield records from public scrutiny. It could simply contract with a private party to perform one of its government functions without requiring production of any written materials.
[15, 16] Section 84-712.01 does not require a citizen to show that a public body has actual possession of a requested record. Construing the "of or belonging to" language liberally, as we must, this broad definition includes any documents or records that a public body is entitled to possessregardless of whether the public body takes possession. The public's right of access should not depend on where the requested records are physically located. *760 Section 84-712.01(3) does not permit the City's nuanced dance around the public records statutes.
As noted, however, the City urges us to follow the U.S. Supreme Court's decision in Forsham. We have previously analogized decisions under the federal FOIA to construe Nebraska's public records statutes.[16] But a close look at Forsham provides little guidance. We believe a critical distinction exists between the judicial construction of the FOIA and § 84-712.01: The FOIA does not define the operative term, and Nebraska's definition of public records is less restrictive than the judicial qualifiers that the Supreme Court has imposed for disclosure under the FOIA.
The FOIA defines "record" as "any information that would be an agency record."[17] It does not define "agency record." And a court can only "order the production of any agency records improperly withheld."[18] The U.S. Supreme Court has stated that the word "`withhold'... presupposes the actor's possession or control of the item withheld."[19] The Court has held that two requirements must be satisfied to show that requested materials qualify as agency records: (1) The agency must "`create or obtain'" the requested materials and (2) "the agency must be in control of the requested materials at the time the FOIA request is made. [Control means] that the materials have come into the agency's possession in the legitimate conduct of its official duties."[20]
In contrast to the U.S. Supreme Court's judicial "create or obtain" definitionwith its attendant possession requirementthe Nebraska Legislature more broadly defined public records to include documents or records "of or belonging to" a public body. And remember, nothing in § 84-712.01 requires a public body to have actual possession of a requested record. Further, Forsham simply does not address disclosure when a public body contractually delegates a governmental function to a private party and decides not to take possession of the written records. To determine whether a Nebraska public body is entitled to records in a private party's possession for purposes of disclosure, we look to other state court decisions.

(b) Functional Equivalency Tests
In recent years, many state courts confronted the interplay of privatization of governmental duties and statutory requirements for access to public records. Some states have statutory provisions that preclude a public body from intentionally or unintentionally circumventing public records statutes by delegating public duties to private parties.[21] As the Iowa Supreme Court has noted, its statutory provision prevents government agencies from accomplishing indirectly what they are prohibited from doing directlyavoiding disclosure.[22]
Many courts have adopted functional equivalency tests for determining whether records in a private party's possession *761 should be disclosed. Many of these tests provide stringent requirements before ordering disclosure. Some of these tests require a requesting party to show that the private party functions as a hybrid public/private entity: an entity created by, funded by, and regulated by the public body.[23] These tests appear appropriate when a private entity performs an ongoing government function. But requiring citizens to show that a private party functions as a hybrid government entity creates a loophole that would often allow public bodies to evade public records laws. As we know, public bodies often contract with independent contractors to provide government services.
[17] We agree with other courts that public records laws should not permit scrutiny of all a private party's records simply because it contracts with a government entity to provide services. But we prefer the Ohio Supreme Court's test, which applies to a broader range of circumstances. For a private entity's records to fall within Ohio's public records act, three requirements must be satisfied: (1) The private entity must prepare the records to carry out a public office's responsibilities; (2) the public office must be able to monitor the private entity's performance; and (3) the public office must have access to the records for this purpose.[24] The court concluded, "[Governmental entities cannot conceal information concerning public duties by delegating these duties to a private entity."[25]
[18,19] We agree. Section 84-712.01(3) does not permit public bodies to conceal public records by delegating their duties to a private party. Accepting the City's argument would mock the spirit of open government. We conclude that the Ohio Supreme Court's test appears to be the most consistent with § 84-712.01's broad definition of public records, and we adapt it to determine whether a public body is entitled to documents in a private party's possession for purposes of disclosure. Specifically, under § 84-712.01, requested materials in a private party's possession are public records if the following requirements are met: (1) The public body, through a delegation of its authority to perform a government function, contracted with a private party to carry out the government function; (2) the private party prepared the records under the public body's delegation of authority; (3) the public body was entitled to possess the materials to monitor the private party's performance; and (4) the records are used to make a decision affecting public interest.
Here, the mayor delegated to Miller's team his authority to investigate allegations of wrongdoing by public officials and set the boundaries of the investigation. The investigators created the records under the City's delegated authority, and the information contained therein proved essential to the mayor's decision in terminating a public official. The City does not claim that the mayor did not have the right to obtain copies of the investigators' records to monitor their performance. And any claim to the contrary lacks credibility  the City having paid $26,000 for this information. The mayor admitted that he terminated Lewis' employment because of the information. Thus, the district *762 court was not clearly wrong in finding that the records belonged to the City and that it relied on the information in the reports, even if it declined to take possession of the materials or pay for a final written report documenting the team's recommendations. We conclude that the investigators' written reports and documents were public records under § 84-712.01.

4. RECORDS WERE EXEMPT FROM DISCLOSURE
[20] The City contends that the court erred in concluding that § 84-712.05(4), (5), and (7) did not exempt requested materials. We agree that the court erred in failing to conclude that § 84-712.05(5) exempted the investigatory records. Thus, we do not decide whether they were also exempt under § 84-712.05(4) or (7).
[21] As noted, the Legislature intended that courts liberally construe §§ 84-712 to 84-712.03 for disclosure whenever a public body expends public funds.[26] Because the Legislature has expressed a strong public policy for disclosure, we must narrowly construe statutory exemptions shielding public records from disclosure.[27]
Under § 84-712.05(5), public bodies have discretion to withhold the following materials:
Records developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training, except that this subdivision shall not apply to records so developed or received relating to the presence of and amount or concentration of alcohol or drugs in any body fluid of any person.
Here, the court ruled that the investigatory records exemption did not apply because (1) Robinson and Kimball are not "`law enforcement agencies'" or "`other public bodies charged with duties of investigation or examination'" and (2) the investigation was not a criminal justice or regulatory investigation. But the City contends that the records here are exempt under our two-part test for investigatory records set out in State ex rel. Neb. Health Care Assn.[28]
In State ex rel. Neb. Health Care Assn., we modified a standard used by federal courts that determined whether an agency can withhold records under exemption 7 of the federal FOIA.[29] Under specified conditions, exemption 7 allows agencies to withhold "records or information compiled for law enforcement purposes." In determining whether a public body compiled records "for law enforcement purposes," some federal courts apply a two-part test. First, the agency's investigatory activities *763 must relate to the enforcement of laws or the maintenance of national security. Second, the relationship between the investigation and one of the agency's law enforcement duties must sufficiently support at least a colorable claim of its rationality.[30]
We modified the two-part test in State ex rel. Neb. Health Care Assn. to also apply to a public body's investigatory records. There, we defined investigatory records:
[A] public record is an investigatory record where (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality.[31]
The two-part test provides a deferential burden-of-proof rule for a public body performing an investigation or examination with which it is charged. But, as we recognized in State ex rel. Neb. Health Care Assn., the investigatory exception does not apply to protect material compiled ancillary to an agency's routine administrative functions or oversight activities.[32] Federal courts have held that exemption 7 applies only when the investigation involves an agency's investigation of "non-agency personnel and of activities external to the agency's own operations"[33] and only when the agency aims its investigation with special intensity on a particular party.[34] Exemption 7 does not apply to material compiled during internal agency investigations in which an agency, acting as the employer, simply supervises its own employees. Exemption 7 does not cover this matter even if the investigation of internal activities reveals evidence that could later cause a law enforcement investigation.[35] If the exemption covered all monitoring of employees' activities, the exemption would swallow the disclosure rule.
As the District of Columbia Circuit Court of Appeals has explained, "Any internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees."[36] But exempting all internal audits from disclosure would permit the exemption to defeat the purpose of the public records laws  "to provide public access to information concerning the Government's own activities."[37] The government must therefore show that the agency compiled the investigatory records for adjudicatory or enforcement purposes and not general agency monitoring of its programs and employees.[38] And "`[a]n agency's investigation of its own employees is for "law enforcement purposes" only if it focuses "directly on specifically alleged illegal acts, acts which could, *764 if proved, result in civil or criminal sanctions."'"[39]
[22-24] We agree that an investigation of a public body's employee is "for law enforcement purposes" if the alleged acts could result in a civil or criminal sanction. Although § 84-712.05(5) does not refer to law enforcement purposes, it does refer to law enforcement agencies and public bodies charged with investigating or examining persons, institutions, or businesses. We interpret this language to mean investigations or examinations for performing adjudicatory or law enforcement functions. Otherwise, the exemption could exempt a broad spectrum of materials that included records related to official misconduct or general government activity. A broad interpretation of the exemption would be inconsistent with the Legislature's policy for disclosure. For the same reason, we also agree that § 84-712.05(5) should only apply to an investigation of a public body's employees if the investigation focuses on specifically alleged illegal acts.
Here, the complaints focused on racial profiling, an illegal act. Nebraska statutes prohibit racial profiling. Neb.Rev.Stat. § 20-502 (Reissue 2007) provides that no "law enforcement agency in this state shall engage in racial profiling." Yet, the Legislature has not enacted any criminal sanctions for this statute or authorized any state agency to investigate allegations of racial profiling.[40] Thus, the only means the City had to enforce the statute arose from Robinson's supervisory power to investigate the job performance of the City's law enforcement officials. Robinson, as the mayor, had statutory responsibility to ensure that the City complied with all governing laws and had the power to remove police officers.[41] Although Robinson's investigation overlapped with his supervisory powers, the City was not monitoring its employees. The investigation concentrated on racial profiling and specifically zeroed in on allegations of racial profiling by Lewis. These allegations, if proved, would constitute a violation of law. We concede that the investigation could not have resulted in civil or criminal sanctions because the Legislature has not enacted enforcement provisions for racial profiling. But we conclude that the mayor's purpose in initiating the investigation was nonetheless for enforcement of the law. Because the statutes charged the mayor as the City's representative to ensure that the City complied with governing laws, we determine that the court erred in concluding that the investigatory records exemption under § 84-712.05(5) did not apply.

5. ATTORNEY FEES WERE NOT AUTHORIZED
[25,26] Finally, the City contends that the court erred in awarding attorney fees. We will affirm a trial court's decision awarding or denying attorney fees absent an abuse of discretion.[42] A party may recover attorney fees and expenses in a civil action only when a statute permits recovery or when we have recognized and accepted a uniform course of procedure for allowing attorney fees.[43]
Section 84-712.07 specifically authorizes attorney fees only when the requesting *765 party has substantially prevailed. Having determined that the court erred in failing to conclude that § 84-712.05(5) exempted the requested records, the appellees have not substantially prevailed. We conclude that the court erred in awarding the appellees an attorney fee under § 84-712.07.

VI. CONCLUSION
We determine that the district court did not err in determining that the requested materials were public records under § 84-712.01. But, we conclude that the court did err in failing to rule that § 84-712.05(5) allowed the City to withhold the records from disclosure. Further, because an exemption applied, the requesting parties did not substantially prevail and the court erred in awarding attorney fees under § 84-712.07. We therefore affirm in part, and in part reverse and remand the cause with directions for the district court to enter an order consistent with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. §§ 84-712 to 84-712.09 (Reissue 2008).
[2] See In re Interest of Anaya, 276 Neb. 825, 758 N.W.2d 10 (2008).
[3] In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009).
[4] See Pennfield Oil Co. v. Winstrom, 276 Neb. 123, 752 N.W.2d 588 (2008).
[5] See State ex rel. Johnson v. Gale, 273 Neb. 889, 734 N.W.2d 290 (2007).
[6] See, Albert v. Heritage Admin. Servs., 277 Neb. 404, 763 N.W.2d 373 (2009); Krolikowski v. Nesbitt, 257 Neb. 421, 598 N.W.2d 45 (1999).
[7] See State ex rel. Steinke v. Lautenbaugh, 263 Neb. 652, 642 N.W.2d 132 (2002).
[8] See In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008).
[9] See id.
[10] In re Interest of Anaya, supra note 2.
[11] Id.
[12] See State ex rel. Neb. Health Care Assn. v. Dept. of Health, 255 Neb. 784, 587 N.W.2d 100 (1998).
[13] See id.
[14] Forsham v. Harris, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980).
[15] See 5 U.S.C. § 552 (2006).
[16] See State ex rel. Neb. Health Care Assn., supra note 12.
[17] 5 U.S.C. § 552(f)(2).
[18] 5 U.S.C. § 552(a)(4)(B).
[19] Kissinger v. Reporters Committee, 445 U.S. 136, 151, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).
[20] Department of Justice v. Tax Analysts, 492 U.S. 136, 144-45, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989).
[21] See, News and Sun-Sentinel v. Schwab, et al., 596 So.2d 1029 (Fla.1992); Gannon v. Board of Regents, 692 N.W.2d 31 (Iowa 2005).
[22] KMEG Tele. v. Iowa State Bd. of Regents, 440 N.W.2d 382 (Iowa 1989), abrogated on other grounds, Gannon, supra note 21.
[23] See, e.g., Connecticut Humane Soc. v. FOIC, 218 Conn. 757, 591 A.2d 395 (1991); Marks v. McKenzie High School Fact-Finding Team, 319 Or. 451, 878 P.2d 417 (1994); Memphis Publishing v. Cherokee Children, 87 S.W.3d 67 (Tenn.2002).
[24] State ex rel. v. Krings, 93 Ohio St.3d 654, 758 N.E.2d 1135 (2001).
[25] Id. at 659, 758 N.E.2d at 1140.
[26] See § 84-712.01(3).
[27] See, e.g., Department of Interior v. Klamath Water Users Protective Assn., 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992); County of Santa Clara v. Superior Court, 170 Cal.App.4th 1301, 89 Cal.Rptr.3d 374 (2009); Herald Co. v. Bay City, 463 Mich. Ill, 614 N.W.2d 873 (2000); Colby v. Gunson, 224 Or.App. 666, 199 P.3d 350 (2008); Trombley v. Bellows Falls Union H.S. Dist. No. 27, 160 Vt. 101, 624 A.2d 857 (1993); Brouillet v. Cowles Publishing Co., 114 Wash.2d 788, 791 P.2d 526 (1990). Compare, State ex rel. Upper Republican NRD v. District Judges, 273 Neb. 148, 728 N.W.2d 275 (2007); Grein v. Board of Education, 216 Neb. 158, 343 N.W.2d 718 (1984).
[28] State ex rel. Neb. Health Care Assn., supra note 12.
[29] See 5 U.S.C. § 552(b)(7).
[30] See State ex rel. Neb. Health Care Assn., supra note 12.
[31] Id. at 792, 587 N.W.2d at 106.
[32] See id.
[33] Stern v. F.B.I., 737 F.2d 84, 89 (D.C.Cir. 1984). See, Rosenfeld v. U.S. Dept. of Justice, 57 F.3d 803 (9th Cir.1995); Pratt v. Webster, 673 F.2d 408 (D.C.Cir.1982).
[34] See State ex rel. Neb. Health Care Assn., supra note 12.
[35] Stern, supra note 33, citing Rural Housing Alliance v. United States Dept. of Agr., 498 F.2d 73 (D.C.Cir. 1974). See, also, Kimberlin v. Department of Justice, 139 F.3d 944 (D.C.Cir.1998).
[36] Rural Housing Alliance, supra note 35, 498 F.2d at 81.
[37] Id.
[38] Patterson v. I.R.S., 56 F.3d 832 (7th Cir. 1995); Stern, supra note 33.
[39] Patterson, supra note 38, 56 F.3d at 837, quoting Stern, supra note 33.
[40] See Neb.Rev.Stat. §§ 20-501 to 20-506 (Reissue 2007).
[41] See Neb.Rev.Stat. §§ 17-107(1) and 17-110 (Reissue 2007).
[42] See State ex rel. Stenberg v. Consumer's Choice Foods, 276 Neb. 481, 755 N.W.2d 583 (2008).
[43] See Simon v. City of Omaha, 267 Neb. 718, 677 N.W.2d 129 (2004).