778 N.W.2d 122 (2010)
18 Neb. App. 247
CITY OF OMAHA, Nebraska, a municipal corporation, appellee,
v.
TRACT NO. 1, also known as 1318, 1320, and 1322 S. 72d Street, et al., appellees,
and
John V. Haltom, appellant.
No. A-09-323.
Court of Appeals of Nebraska.
January 26, 2010.
*125 Brian B. Vakulskas, of Vakulskas Law Firm, P.C., for appellant.
Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch, for appellee City of Omaha.
SIEVERS, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
John V. Haltom claims that Neb.Rev. Stat. § 76-710.04 (Reissue 2009) prohibits the City of Omaha, Nebraska (the City), from using its eminent domain powers to acquire land for the purpose of constructing a deceleration lane on an existing public street, because the deceleration lane leads to an access to a well-known national retailer of consumer goods. Because, as a matter of law, such construction for traffic control and safety purposes does not constitute an "economic development purpose," we affirm the district court's decision rejecting Haltom's claim.

BACKGROUND
This is an appeal from a condemnation action. The City negotiated with property owners to acquire a strip of land for the purpose of installing a deceleration lane for traffic that would access a new development which included a building to be occupied by the retailer. The City also sought temporary easements for the purpose of constructing the deceleration lane. After initial negotiations to acquire the real property failed, the City filed a petition in county court to condemn the property. The "Report of Appraisers" awarded Haltom and another property owner a collective total of $55,300.
Haltom filed a "Complaint on Appeal" to appeal this matter to the district court. Haltom alleged four separate causes of action, only one of which is the subject of the instant appeal. In the relevant cause of action, Haltom alleged that § 76-710.04 prevented the City from acquiring the property, because the proposed use of the property constituted an "economic and development purpose."
The City then filed a motion for partial summary judgment on three of the four causes of action, including the one pertinent to this appeal.
At the summary judgment hearing, the City adduced evidence regarding the purpose for which the condemned property would be used. This included an affidavit by Charlie Krajicek, the city engineer. His affidavit stated that in his review of the retailer's development plans, he determined that a deceleration lane was necessary for traffic. His specific reasoning was as follows:
[A]s a result of the anticipated increased traffic on 72nd Street as time elapses and the potential for the slowing of traffic on 72nd Street accessing the new [commercial] facility as traffic proceeded southbound, I determined that it was *126 necessary that a deceleration lane be constructed to handle southbound traffic that would be accessing the new development.... [T]he purpose of requiring the deceleration lane was to allow traffic on 72nd Street to proceed in an orderly and efficient fashion and to limit the potential collisions as a result of cars decelerating on the right-of-way.
Krajicek also explained that the decision to acquire the land "was solely the decision of the City ... and was made by [Krajicek] and those individuals under [his] direct supervision." Krajicek's affidavit also stated that the construction of the deceleration lane had been completed. Haltom did not offer any responsive evidence.
The district court granted the City's motion for partial summary judgment. Later, at the parties' request, the district court dismissed the remaining cause of action.
Haltom timely appeals.

ASSIGNMENT OF ERROR
Haltom assigns, as restated, that the district court erred in failing to determine that the City condemned his property for an economic development purpose. In its brief, the City addressed Haltom's argument but also asserted that Haltom's claim was moot.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Lamar Co. v. City of Fremont, 278 Neb. 485, 771 N.W.2d 894 (2009). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

Mootness.
The City argues that the appeal is moot because the City has already installed the deceleration lane. At oral argument, Haltom's counsel conceded that the deceleration lane had been constructed and that it would make no sense to demolish it, but urged the court to consider the issue under the public interest exception to the mootness doctrine.
A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome. Evertson v. City of Kimball, 278 Neb. 1, 767 N.W.2d 751 (2009). Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction. Id.
But under the public interest exception, an appellate court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. See id. And when determining whether a case involves a matter of public interest, the appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. Id.
Considering these factors, the public interest exception clearly applies. We confront a recent legislative enactment limiting the use of the sovereign power of eminent domain, which presents a public *127 question. Municipal authorities desiring to condemn real estate for street improvements adjoining commercial development would rely upon an authoritative adjudication for guidance in future proceedings. Such condemnation proceedings frequently occur under nearly identical circumstances. Thus, the case falls within the public interest exception and we turn to the substantive question before us.

Effect of § 76-710.04.
Haltom's sole argument is that § 76-710.04 prevents the City from using its eminent domain powers in the instant case.
We first summarize the nature of eminent domain. Eminent domain is defined generally as the power of the nation or a state, or authorized public agency, to take or to authorize the taking of private property for a public use without the owner's consent, conditioned upon the payment of just compensation. Krambeck v. City of Gretna, 198 Neb. 608, 254 N.W.2d 691 (1977). The power of eminent domain is a sovereign power which exists independent of the Constitution of Nebraska. Burger v. City of Beatrice, 181 Neb. 213, 147 N.W.2d 784 (1967). The Legislature may delegate the power of eminent domain. See Burlington Northern Santa Fe Ry. Co. v. Chaulk, 262 Neb. 235, 631 N.W.2d 131 (2001). The Constitution of Nebraska and legislative enactments pursuant thereto are in no sense a grant of power, but are and should be treated as a limitation of the power of eminent domain. Burger v. City of Beatrice, supra.
The Legislature has delegated the power of eminent domain to cities of the metropolitan class, including the City, to acquire property for use as part of a public street pursuant to Neb.Rev.Stat. § 14-366 (Reissue 2007). Section 14-366 provides as follows in this regard:
The city may purchase or acquire by the exercise of the power of eminent domain private property or public property which is not at the time devoted to a specific public use, for the following purposes and uses: (1) For streets, alleys, avenues, parks, recreational areas, park-ways, playgrounds, boulevards, sewers, public squares, market places, and for other needed public uses or purposes authorized by this act, and for adding to, enlarging, widening, or extending any of the foregoing; and (2) for constructing or enlarging waterworks, gas plants, or other municipal utility purposes or enterprises authorized by this act.
Thus, § 14-366 specifically allows the City to condemn private property for use as a public street.
However, the Legislature recently subjected the power of eminent domain to an additional limitation. In 2006, after the U.S. Supreme Court determined in Kelo v. New London, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), that the transfer of land to a third party for the purpose of furthering a city's economic development plan was a sufficiently public use to permit the exercise of eminent domain, the Nebraska Legislature passed 2006 Neb. Laws, L.B. 924, to prohibit the use of eminent domain "if the taking is primarily for an economic development purpose." This is now codified at § 76-710.04.
In pertinent part, § 76-710.04 provides as follows:
(1) A condemner may not take property through the use of eminent domain... if the taking is primarily for an economic development purpose.
(2) For purposes of this section, economic development purpose means taking property for subsequent use by a commercial for-profit enterprise or to increase tax revenue, tax base, employment, or general economic conditions.

*128 (3) This section does not affect the use of eminent domain for:
(a) Public projects or private projects that make all or a major portion of the property available for use by the general public or for use as a right-of-way, aqueduct, pipeline, or similar use.
Haltom argues that the deceleration lane primarily served the "economic development purpose" of providing vehicles access to the retailer. He argues that the addition of the deceleration lane will ultimately cause the expansion of the City's property and sales tax bases through providing the retailer's customers easier access to the retailer's parking lot.
However, we conclude that the plain language of § 76-710.04 does not prevent the City from acquiring private property for use as a deceleration lane on an existing public road, even though the deceleration lane is contiguous to access to the retailer. Section 76-710.04(1) prohibits the use of eminent domain powers where the taking is "primarily for an economic development purpose." (Emphasis supplied.) Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond the statute or interpret it when the meaning of its words is plain, direct, and unambiguous. State ex rel. Parks v. Council of City of Omaha, 277 Neb. 919, 766 N.W.2d 134 (2009). Although the collateral consequences of the addition of a deceleration lane may include some enhancement to economic development, the primary purpose of the deceleration lane clearly is to promote traffic safety and the efficient flow of traffic on the City's streets.
Based on the undisputed evidence, there are four reasons sufficient to dispel Haltom's argument that the deceleration lane was primarily intended to fulfill an "economic development purpose" as defined by § 76-710.04(2). First, the City did not take the property primarily "for subsequent use by a commercial for-profit enterprise." The real property was not acquired for the "use" of a commercial enterprise in any traditional sense. The City will be the owner of title to the land, and, because the land will be used as part of a public street, the primary users will be members of the public at large. Second, the City's acquisition of the real property at issue will not serve the primary purpose of "increas[ing] tax revenue" or "tax base." The land acquired by the City will not contain any entity that will generate sales or property taxes. Property taxes cannot be assessed on the property in question due to the City's ownership of the land for public use. See Neb.Rev.Stat. § 77-202(1)(a) (Reissue 2009). Third, the City's acquisition of the land cannot be construed as primarily serving the purpose of increasing employment. While the construction of a deceleration lane will require the temporary use of labor, the purpose of a deceleration lane is unrelated to the creation of additional jobs; instead, it is directly related to traffic control. Finally, the use of the property cannot be construed as primarily related to "general economic conditions," because there is no evidence that this affected the City's exercise of its eminent domain powers. The City's engineering department, which decided to acquire the property at issue, did so for reasons entirely unrelated to economic conditions. In his affidavit, Krajicek stated that the purpose of the deceleration lane "was to allow traffic ... to proceed in an orderly and efficient fashion and to limit the potential collisions as a result of cars decelerating on the right-of-way." Haltom offered no evidence to rebut Krajicek's affidavit. There is no evidence that the retailer used economic pressure *129 to convince the City to install the deceleration lane.
In addition, § 76-710.04(3)(a) clarifies that § 76-710.04(1) does not apply to "projects that make all or a major portion of the property available for use by the general public or for use as a right-of-way." In the instant case, the deceleration lane will be available for general public use and constitutes a right-of-way. In this context, a right-of-way is defined as "land covered by a public road." Webster's Encyclopedic Unabridged Dictionary of the English Language 1234 (1989). Thus, the deceleration lane serves no economic development purpose under the terms of § 76-710.04.
We acknowledge that the City's use of eminent domain to acquire land for a deceleration lane may provide an incidental and indirect benefit to the retailer. However, the plain language of § 76-710.04 prohibits the exercise of eminent domain only where its primary purpose is economic development  not where economic development may be a collateral benefit. Many permissible uses of eminent domain provide collateral benefits to private industry. For example, when land is acquired by eminent domain for the purpose of a public building such as a school, nearby private enterprises, such as convenience stores or restaurants, may also benefit. The use of eminent domain to install utilities can provide collateral benefits to surrounding businesses. There are countless other instances where the exercise of eminent domain indirectly enhances economic development. Therefore, Haltom's argument  which focuses on a collateral consequence of eminent domain as opposed to its primary purpose  is without merit.

CONCLUSION
We first conclude that although the deceleration lane has been constructed, we may consider Haltom's appeal on its merits because the public interest exception to the mootness doctrine applies. We also conclude that the district court did not err in granting the City's motion for partial summary judgment, because § 76-710.04 does not, as a matter of law, prohibit the City from using its eminent domain powers to acquire property for the purpose of constructing a deceleration lane on an existing public road for traffic control and safety purposes.
AFFIRMED.