PATRICK RONALD RUSSELL, APPELLANT, V.
HAROLD CLARKE ET AL., APPELLEES.

724 N.W.2d 840

Filed December 5, 2006.    No. A-04-1319.

Patrick Ronald Russell, pro se.

Jon Bruning, Attorney General, and Maureen Hannon for appellees.

INBODY, Chief Judge, and MOORE and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Patrick Ronald Russell appeals from the judgment of the district court for Johnson County, Nebraska, as amended in response to the appellees' motion to alter or amend judgment, effectively denying Russell relief upon his petition for writ of mandamus seeking to compel the appellees to provide public records. We determine that (1) a motion for summary judgment is permissible in a mandamus action, (2) the appellees produced evidence sufficient to disprove an element of mandamus and Russell failed to adduce contrary evidence, (3) the Nebraska Department of Correctional Services (DCS) had no obligation to transport Russell to the office where a record he sought was located, and (4) granting the motion to alter or amend judgment

to correctly reflect the original evidence was not an abuse of discretion. We therefore affirm.

## BACKGROUND

Russell is an inmate in the custody of DCS and is presently incarcerated within the Tecumseh State Correctional Institution (TSCI). Russell submitted requests based upon Neb. Rev. Stat. §§ 84-712 to 84-712.09 (Reissue 1999 & Cum. Supp. 2002) (the public records statutes). Russell addressed the requests to the appellees in this action, namely Harold Clarke, then director of DCS; Mary Carmichael, the contract monitor at TSCI; and Jerry Bryan, a unit manager at TSCI.

Russell divided his requests into two categories, one seeking "[r]ecord[s]" and the other seeking "[i]nformation." (Emphasis omitted.) Russell's requests for records sought:

(1) Medically Prescribed Bland Diet Menu currently being used by Aramark at [TSCI].

(2) Any and all contracts in exist[e]nce between [DCS] and Aramark Corporation, for the Food Service being provided at [TSCI].

(3) Any and all audit reports conducted on the Food Service provided by Aramark comp[il]ed by either [DCS] or Aramark.

(4) Any and all recipes being used to prepare the food provided in the medically prescribed bland diet tray.

(5) Any and all licen[s]es on Aramark showing [it is] licensed to provide food service.

(6) Any and all food handler certificates and licen[s]es on all employees of Aramark and on all inmates working in the food service area.

Russell also sought information as follows:

(1) Complete listing of the first and last names of all Aramark employees working at the Food Service Department within [TSCI].

(2) Complete name and address of Aramark General Manager who is responsible for the staff at [TSCI].

(3) Name and address of the Chief Exec[u]tive Officer . . . of Aramark.

(4) Name and address of Aramark's general legal counsel.

    (5) Name and address of Aramark employee responsible to receive court service for this area.

    (6) Name and address of the current dietician for [DCS].

    (7) Address and position for Ron Fisher.

An attorney for the appellees initially responded to Russell's requests, asserting that the appellees were unable to provide copies of the requested public records within 4 business days and providing Russell with a specific date by which further response would be made. Approximately 3 days later, the attorney submitted the appellees' final response, which we summarize:

As to Russell's first records request, the appellees would provide copies of five pages of bland diet menus, which constituted all of the relevant menus, upon payment of the cost of copying at 10 cents per page. The items requested in Russell's second records request included a contract contained in three three-ring binders and estimated to be between 1,200 and 1,500 pages in length. The appellees offered to provide the full contract at 10 cents per page or to provide specific parts of the contract if Russell desired to limit his request. The response claimed that Russell's third, fourth, and fifth records requests did not describe any public record belonging to DCS. Regarding Russell's sixth records request, the response stated that inmates do not have food handler licenses or certificates and that Russell's request for licenses of Aramark employees did not describe any public record belonging to DCS.

As to Russell's requests for information, the response claimed that each request did not describe a public record belonging to DCS. The response to the seventh request did, in addition, identify the position, workplace facility, and address of Ron Fisher.

On March 3, 2004, Russell commenced this action in the district court, seeking a writ of mandamus. On April 29, the appellees filed an answer admitting the content of Russell's requests and alleging the content of the responses submitted by the attorney for DCS on behalf of the appellees.

Prior to the filing of the answer on behalf of the appellees, the district court had taken no action on Russell's petition for writ of mandamus. On August 9, 2004, Russell filed a written motion for an evidentiary hearing. By order entered on September 2, the court scheduled such a hearing for October 25. On October 4, the

appellees filed a motion for summary judgment, which was also scheduled for hearing on October 25. The appellees also filed a motion to continue the evidentiary hearing until after a disposition of the motion for summary judgment. On October 25, the court sustained the motion for continuance of the evidentiary hearing pending ruling on the motion for summary judgment and received documentary evidence on the summary judgment motion. We summarize that evidence in the analysis section of this opinion.

By order entered on October 28, 2004, the district court granted the appellees' motion for summary judgment in part and also ordered issuance of a peremptory writ of mandamus to Clarke as to the first six of Russell's requests for information. The court found that there was no genuine issue as to any material fact and granted relief against both Russell and the appellees. The court determined that Russell's first request for records was satisfied by the appellees' response. The court did not expressly rule on Russell's second request for records, but implicitly determined that the appellees' response also satisfied that request. The court determined that there was no evidence that any records specified by Russell's third, fourth, fifth, and sixth requests for records existed as public records. The court granted summary judgment in favor of the appellees with respect to those items. With respect to Russell's first six requests for information, the court determined that the appellees possessed the information and that the information was a public record within the meaning of § 84-712.01 and accordingly granted Russell's request for a peremptory writ of mandamus as to those items. Russell's petition did not address his seventh request for information, and we do not address it further in this opinion.

On November 3, 2004, the appellees timely filed a motion to alter or amend the judgment, asserting that Russell had not filed a motion for summary judgment and arguing that the court erred in granting affirmative relief against the appellees in the absence of such motion. The appellees' motion also argued that the Nebraska statutes do not require state agencies to answer general questions which seek information that has never been put into document form, especially where the information concerns general information about a private corporation.

On November 15, 2004, the district court conducted a hearing on the appellees' motion to alter or amend judgment. Both Russell and counsel for the appellees appeared by telephone. No additional evidence was offered or received at this hearing, which consisted only of discussion between the court, Russell, and counsel for the appellees. By order entered on November 22, the court granted the appellees' motion with respect to Russell's third, fourth, fifth, and sixth requests for information. With respect to the third, fourth, and fifth requests, the court found no evidence contradicting the appellees' evidence that the information is not contained in any public record. The court also found that the appellees had supplied Russell with the information in his first request for information, that Russell had obtained the information sought in his second request for information as demonstrated by his successful service of a subpoena on Aramark's general manager, and that the evidence showed that there is no current dietician for DCS, whose name and address were the subject of Russell's sixth request for information. Accordingly, the court determined that "no further action on behalf of the [appellees] is required." The court's order stated that the appellees' motion to alter or amend judgment was granted and that the earlier order was amended "to only require that the information in the first request for information be provided."

Russell timely appeals.

## ASSIGNMENTS OF ERROR

Russell assigns, restated, that (1) the district court erred in (a) entertaining the appellees' motion for summary judgment and (b) finding that some of the documents sought were not public records and (2) the district court abused its discretion in (a) granting the motion to alter or amend judgment where no evidence was provided to show that the information sought was not a part of the contract and (b) not ordering the production of the contract sought "which is still being denied" to Russell.

Russell also assigns, but does not argue, error in the district court's granting a continuance of the trial of the mandamus action for the purpose of hearing the motion for summary judgment, in its granting motions to quash subpoenas for relevant trial witnesses, and in its denying Russell out-of-pocket costs for the action. Errors that are assigned but not argued will not be

addressed by an appellate court. See *Epp v. Lauby*, 271 Neb. 640, 715 N.W.2d 501 (2006). We will not further address the errors which Russell has assigned but not argued.

## STANDARD OF REVIEW

A grant or denial of mandamus is within the trial court's discretion. *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Marksmeier v. McGregor Corp.*, 272 Neb. 401, 722 N.W.2d 65 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Bohaboj v. Rausch*, 272 Neb. 394, 721 N.W.2d 655 (2006).

A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. See *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

## ANALYSIS

*Propriety of Summary Judgment.*

Russell argues that because Neb. Rev. Stat. § 25-2164 (Reissue 1995) provides that "[n]o other pleading or written allegation is allowed than the writ and answer," summary judgment is unauthorized in a mandamus proceeding. However, this argument ignores other language in the same statute, which provides:

> These are the pleadings in the case, and have the same effect and are to be construed and may be amended in the same manner as pleadings in a civil action; and the issues thereby joined must be tried, and the further proceedings thereon had in the same manner as in a civil action.

§ 25-2164.

Nebraska law defines pleadings as the written statements by the parties of the facts constituting their respective claims and defenses. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002). A motion for summary judgment

is not a pleading. *Welsch v. Graves*, 255 Neb. 62, 582 N.W.2d 312 (1998). It is fundamental that the primary purpose of a summary judgment procedure is to pierce the allegations made in the pleadings and to show conclusively that the controlling facts are otherwise than alleged and that the moving party is entitled to judgment as a matter of law. *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005).

The only case cited by Russell in support of this proposition is *State ex rel. Krieger v. Board of Supervisors*, 171 Neb. 117, 105 N.W.2d 721 (1960). However, that case does not support Russell's argument; rather, it addressed whether the trial court improperly entertained a motion to make more definite and certain and, upon overruling that motion, improperly granted the respondent additional time to answer. The Nebraska Supreme Court found no abuse of discretion in the trial court's procedure, stating that the ordinary rules of pleading, where there are no special provisions of the statute to the contrary, apply to proceedings by mandamus. In *State ex rel. PROUD v. Conley*, 236 Neb. 122, 459 N.W.2d 222 (1990), the Nebraska Supreme Court affirmed an order of the district court granting the defendants' motion for summary judgment in an action for mandamus. While the court did not specifically address the propriety of summary judgment in a mandamus action, the court's opinion suggests that it is appropriate. Moreover, the language of the statute upon which Russell relies contemplates "further proceedings . . . in the same manner as in a civil action." § 25-2164. Clearly, the summary judgment procedure is applicable to a civil action. See Neb. Rev. Stat. § 25-1330 (Cum. Supp. 2004). We reject Russell's argument that the summary judgment procedure cannot be used in an action for writ of mandamus.

■ Russell also argues that the district court abused its discretion in not allowing him to "argue against the motion" for summary judgment and that "it was understood from what the court stated that all that [the] court was considering was the motion to strike, and not the motion for summary judgement." Brief for appellant at 8. However, Russell does not assign these matters as error. Errors argued but not assigned will not be considered on appeal. *Japp v. Papio-Missouri River NRD*, 271 Neb. 968, 716 N.W.2d 707 (2006).

*Evidence on Summary Judgment.*

■ Russell contends that the trial court erred in granting summary judgment for the appellees because "all of the documents and information sought were in [the] appellees['] custody." Brief for appellant at 4-5. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006).

■ A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Marksmeier v. McGregor Corp.*, 272 Neb. 401, 722 N.W.2d 65 (2006).

■ Before turning to the evidence in the instant case, we note that mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *Crouse v. Pioneer Irr. Dist.*, 272 Neb. 276, 719 N.W.2d 722 (2006). In order to establish a prima facie case for summary judgment, the appellees were required to produce enough evidence to disprove one or more of the elements of mandamus if the evidence were uncontroverted at trial.

In the instant case, we focus upon the second element, i.e., the existence of a clear duty on the part of the appellees to perform the act. In this action based upon the public records statutes, the appellees were clearly required to allow Russell to examine and

make or obtain copies of public records on the premises of the custodian of the records during the hours the custodian's office may be kept open for the ordinary transaction of business. See § 84-712. The primary issues, however, were whether the records existed and whether they constituted records of DCS. This obviously depends upon the definition of a "public record," which includes "all records and documents, regardless of physical form, of or belonging to this state . . . or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing." § 84-712.01(1).

At the hearing on the appellees' motion for summary judgment, the appellees' evidence included affidavits from all three appellees. The affidavit of Clarke stated that as director of DCS, he was responsible for the total administration of DCS; that DCS employed Jan Lehmkuhl as contract administrator; and that she was delegated the duty to maintain the physical contracts entered into by DCS. The affidavit further states that the contract was physically maintained at the DCS central office in Lincoln, Nebraska, and consisted of three binders. The affidavit of Bryan, a unit manager at TSCI, stated that Bryan had never been responsible for maintaining any part of the contract between Aramark and DCS and that he had never been responsible for maintaining any of the information or records requested by Russell.

The affidavit of Carmichael stated that she was employed as the contract manager for DCS and that as part of her employment, she had what she described as a " 'working copy' " of the contract. The affidavit stated that the " 'working copy' " was for reference and was not an official or complete document and that a member of the public requesting to see a copy of the contract between DCS and Aramark would be directed to contact Lehmkuhl at the DCS central office. Carmichael also stated in the affidavit that Aramark follows the DCS master menu and must follow guidelines established by the dietician, but uses its own recipes to prepare the actual meals. She further stated that the recipes do not belong to DCS. She added that DCS has access to a list of Aramark employees, but the list is maintained by Aramark and often changes, and that DCS does not maintain a list of its own. Carmichael further noted that she had never

received a request from Russell designating which portions of the contract he sought to have copied, that she had only received money sufficient to cover a single set of copies of the bland diet, and that she had provided Russell with the copies of the bland diet.

An affidavit of Lehmkuhl stated that she was employed as the materiel administrator for DCS, that she maintained the only complete and official copy of the contract between DCS and Aramark for food services at TSCI, and that the contract was kept in three binders at the purchasing office in the DCS central office in Lincoln. Her affidavit maintained that the contract stated the "bland diets exists [sic]" but that the contract did not specifically address bland diets. The affidavit added that the contract did not "require DCS to prepare reports entitled 'audit reports' of the food service offered by Aramark" and that DCS had not been "audited by the State Auditor since the Aramark contract came into effect." Lehmkuhl's affidavit also stated that DCS had no reports "dealing [with] bland diets." The affidavit further stated that the State of Nebraska did not require food handler permits or licenses within the correctional setting. Lehmkuhl asserted in the affidavit that she had never received any request from Russell for copies of the contract, a portion of the contract, or any other public record.

In response to the appellees' evidence, the evidence submitted by Russell consisted of a copy of his initial request to Clarke; a copy of a "kite" showing the transmittal by mail of the request to Clarke; a copy of the original request to Carmichael; a copy of a "kite" to Carmichael including Carmichael's response, in which she referred to the memorandum from the appellees' legal counsel formally responding to the records request; a copy of the original request to Bryan; a copy of the initial response of the appellees' legal counsel advising that additional time was required to respond to Russell's request; a copy of the subsequent formal response by appellees' legal counsel; a copy of a "kite" transmitting an institutional check for 50 cents for the cost of copying the bland diet menu and including a response of Bryan showing that copies had already been made; and a copy of the appellees' answers to Russell's requests for admissions. None of the admissions made pursuant to the requests contradicts the evidence adduced by the appellees.

The evidence adduced by the appellees established a prima facie case that there were no public records maintained by DCS other than those of which copies were provided or of which the appellees offered to provide copies upon payment of the reasonable expense of copying. Russell failed to adduce evidence to the contrary, and we find that the ultimate decision of the district court, after consideration of the appellees' motion to alter or amend judgment, correctly determined, as a matter of law, that there was no genuine issue or dispute of fact and that the appellees were entitled to judgment as a matter of law.

*Failure to Order Production of Contract.*

As part of his argument that he was entitled to public records, Russell argues that Carmichael "refused to provide access to review or the requested photocopies" of the contract with Aramark. Brief for appellant at 6. The substantive formal response by the appellees' legal counsel clearly offers to provide a copy of the contract upon payment of the expense of copying or to copy specific portions designated by Russell as to subject matter. The evidence clearly establishes that no request for a copy of the full contract accompanied by payment was ever received. The evidence also shows that Russell never made a subsequent request to designate a particular portion or portions by subject matter. While Russell appears to argue that he should have been allowed to travel to the location of the contract, he cites no authority for this claim. Russell is a prisoner in custody of DCS at Tecumseh, Nebraska. Section 84-712(1) authorizes "examination [at] the respective offices" of DCS. In the instant case, the evidence is undisputed that the location of the contract is DCS' offices in Lincoln, Nebraska. Russell cites no authority for the proposition that DCS is required to transport Russell to the offices in Lincoln for the purpose of examining that public record. Russell also complains that "as the [DCS] Contract Monitor [Carmichael] sho[u]ld have a complete copy of all contracts, which does not appear to be the case." Brief for appellant at 7. Thus, in Russell's brief to this court, he acknowledges that Carmichael did not have the contract which Russell sought to examine. We find no error in the ruling of the district court on this matter.

*Motion to Alter or Amend Judgment.*

Although Russell argues that he was denied the right to be heard upon the appellees' motion to alter or amend judgment, the record reflects that he was present for the telephonic hearing. While during the hearing Russell did not argue regarding the specific merits of the motion, the record does show that Russell spoke up and participated in the discussions with the court in the first portion of the hearing regarding scheduling of hearings on other motions. Later in the hearing, Russell remained silent while the district court and the appellees' counsel engaged in a discussion regarding the merits of the motion. We have carefully examined the record and find no suggestion that Russell attempted to make any such argument or that the district court or anyone else prevented him from doing so. We find no merit in this argument.

Russell also argues that "there was no evidence provided to the court to justify . . . altering or amending the judgement." Brief for appellant at 8-9. He argues that the information sought was "apart [sic] of the contract and this is why the contract has not been provided and was not ordered produced by the court." *Id.* at 9. While there was no new evidence adduced at the hearing on the motion to alter or amend judgment, through the arguments of their counsel the appellees succeeded in persuading the district court that the court's original view of the evidence was in part incorrect. In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2004), and must seek substantive alteration of the judgment. *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005). In the instant case, the appellees' motion was filed within 10 days after the entry of the initial judgment and clearly sought substantive alteration of that judgment. Contrary to Russell's argument, the trial court had the authority to consider the appellees' motion, and we find no abuse of discretion in the court's ruling.

## CONCLUSION

A motion for summary judgment is a proper procedural device in an action for a writ of mandamus. The appellees produced

evidence sufficient to disprove the element of mandamus of the existence of a clear duty on the part of the appellees to perform the act, and Russell failed to adduce contrary evidence, thereby entitling the appellees to summary judgment. DCS had no obligation to transport Russell to the office where a particular record was located. The district court did not abuse its discretion in granting the appellees' motion to alter or amend judgment, where the effect of the action was to correctly reflect the original evidence. We affirm the judgment of the district court.

AFFIRMED.