Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/17/2020 08:08 AM CDT

Herchel H. Huff, appellee, v. Doug Brown,
sheriff of Furnas County, appellant.

___ N.W.2d ___

Filed April 23, 2020.    No. S-19-271.

1. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.

2. **Mandamus.** Whether to grant a writ of mandamus is within the trial court's discretion.

3. **Public Officers and Employees: Records.** The duty, if any, to provide public records stays with the office of the records' custodian and is transferred to a new holder of the office.

4. **Mandamus: Proof.** A party seeking a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Cum. Supp. 2018) has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) the requesting party has been denied access to the public record as guaranteed by Neb. Rev. Stat. § 84-712 (Reissue 2014).

5. ____: ____. If the public body holding the record wishes to oppose the issuance of a writ of mandamus, the public body must show, by clear and conclusive evidence, that the public record at issue is exempt from the disclosure requirement under one of the exceptions provided by Neb. Rev. Stat. § 84-712.05 (Cum. Supp. 2018) or Neb. Rev. Stat. § 84-712.08 (Reissue 2014).

6. **Mandamus: Words and Phrases.** Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding

clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary court of law.

7. **Mandamus: Proof.** Under Neb. Rev. Stat. § 84-712.03(1)(a) (Cum. Supp. 2018), the requesting party's initial responsibility includes demonstrating that the requested record is a public record that he or she has a clear right to access under the public records statutes and that the public body or custodian against whom mandamus is sought has a clear duty to provide such public records.

Appeal from the District Court for Furnas County: JAMES E. DOYLE IV, Judge. Affirmed in part, and in part reversed and remanded.

Melodie T. Bellamy, Special Counsel for Furnas County, and Morgan R. Farquhar, Furnas County Attorney, for appellant.

Herchel H. Huff, pro se.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ.

MILLER-LERMAN, J.

NATURE OF CASE

Doug Brown, the sheriff of Furnas County, appeals the order of the district court for Furnas County, Nebraska, which granted in part a writ of mandamus requiring him to provide records to Herchel H. Huff pursuant to the public records statutes. Brown argues, inter alia, that the court erred when it substituted him as a party for the prior sheriff, when it granted the writ based solely on Huff's affidavit, when it granted the writ despite Huff's failure to respond to the prior sheriff's response which required Huff to deposit fees before certain records would be produced, and when it waived fees that were authorized by statute.

We conclude that although the district court did not err when it substituted Brown's name for that of the former sheriff, the court erred when it determined that Huff had shown that Brown had a clear duty to provide the records requested. We

therefore affirm in part the order to the extent it denied Huff's petition but reverse in part the order to the extent it granted the writ of mandamus.

STATEMENT OF FACTS

On September 23, 2018, Huff sent to then Furnas County sheriff Kurt Kapperman a 4-page letter which included 15 numbered paragraphs of requests for public records. Huff is an inmate serving sentences for convictions including motor vehicle homicide. The documents requested by Huff included, inter alia, records relating to the investigation of charges against him, criminal history records of jurors who had convicted him, criminal history records of and fees and expenses paid to witnesses and prosecuting attorneys in his trial, information regarding the salaries paid to the sheriff, and records relating to the impoundment of his vehicle.

Kapperman responded in writing to Huff's requests on October 2, 2018. Kapperman stated that "no responsive records exist[ed]" as to 14 of the 15 paragraphs of requests. The remaining paragraph, denominated as "request 3," included requests for jail records, including medical records, maintained pursuant to Neb. Rev. Stat. § 47-204 (Reissue 2010). In request 3, Huff requested his own jail records as well as records for certain jurors from his trial that he asserted had been "convicted [of] or cited for DWI." In his response, Kapperman stated with respect to the request for jail records relating to jurors that "no responsive records exist, and the request seeks protected medical information." With respect to the request for Huff's jail records, Kapperman estimated that "the inspection and copying of records would cost approximately $750.00" and stated that he therefore required "a deposit of $750.00 before fulfilling such a request." Kapperman cited Neb. Rev. Stat. § 84-712(3)(f) (Reissue 2014) as authority for requiring the deposit.

On October 15, 2018, Huff filed a petition for writ of mandamus under Neb. Rev. Stat. § 25-2156 (Reissue 2016) and

the public records statutes, Neb. Rev. Stat. § 84-712 et seq. (Reissue 2014 & Cum. Supp. 2018). Huff named "Sheriff Kurt Kapperman" as the defendant in the petition. Huff sought an "order compelling . . . Kapperman to release all requested documents per the [public records] statutes." Kapperman filed an answer on January 21, 2019, in which he generally denied the allegations in Huff's petition. Kapperman also asserted that Huff had failed to state a claim against him upon which relief could be granted, because Brown had been sworn into office on January 3 and Kapperman was no longer sheriff.

On January 30, 2019, the court held a telephonic hearing. The court first took up and overruled Huff's motion to disqualify the judge. The court then turned to the petition for a writ of mandamus. The court referred to an affidavit of Huff dated November 13, 2018, which had been offered into evidence by Huff and marked as exhibit 3. It generally asserted that Huff had requested documents from Kapperman, that the documents were public records subject to disclosure, and that Kapperman had failed to comply with Huff's request and was refusing to release records, in violation of the public records statutes. Kapperman objected to exhibit 3 "on the basis that [he had not] had an opportunity to cross-examine" Huff regarding statements in the affidavit. The court overruled Kapperman's objection and admitted exhibit 3 into evidence.

Neither Huff nor Kapperman offered additional evidence, and the court heard argument by both parties. In addition to arguing that he could not comply with Huff's request because he was no longer the sheriff of Furnas County, Kapperman argued that Huff was barred from proceeding with his claim because Huff had failed to timely respond to Kapperman's response of October 2, 2018, in violation of § 84-712(4), which requires a deposit before Kapperman would provide the requested records that were in his possession.

On February 14, 2019, the district court filed an order in which it granted in part and denied in part Huff's petition for a writ of mandamus. The court addressed Kapperman's argument

that Huff failed to state a claim against Kapperman because he was no longer the Furnas County sheriff. The court stated that the fact that Kapperman was no longer the sheriff was "of no consequence" because the petition was directed at the office of the sheriff, not at the specific individual occupying the office at any given time. Accordingly, the court permitted Huff "to substitute . . . Brown, the current Furnas County Sheriff[,] in the caption of the case in place of Kapperman."

Turning to the merits of Huff's request, the court stated that the sheriff's response that he had "no responsive records" to most of Huff's requests was "not sufficient." The court cited Nebraska precedent which it read to provide that the reference in § 84-712.01(1) to public records "of or belonging to" a public custodian "should be construed liberally to include documents or records that a public body is entitled to possess, regardless of whether the public body actually has possession of the documents." Based on that reading of precedent, the court reviewed Huff's specific requests and categorized them into three general groups: (1) records the sheriff was not required to produce, (2) records the sheriff appeared to be entitled to possess, and (3) records the sheriff appeared not to be entitled to possess.

The court included in the first category—records the sheriff was not required to produce—medical records related to persons other than Huff and a report of the names of all county officials. In his request 3, Huff requested, inter alia, jail records, including medical records, for certain jurors in his trial. The court determined that medical records relating to persons other than Huff were exempt from production under § 84-712.05(2). In another request, Huff requested records maintained pursuant to Neb. Rev. Stat. § 23-1306 (Reissue 2012) regarding "all the county officers with their official signatures and seals of their respective offices." The court noted that § 23-1306 gave the county clerk the duty to maintain such records regarding county officers. The court determined that the sheriff might be entitled to possess such

records with regard to his own office, and it therefore included records regarding the office of sheriff in the second category, discussed below. However, the court concluded that with regard to records regarding other county officials, the sheriff did not have a duty to respond. The court therefore denied in part Huff's petition for mandamus, because it pertained to the requests for medical records of others and information regarding other county officers.

The court generally granted mandamus as to Huff's remaining requests and set forth different requirements as to each request depending on how certain the court was that the sheriff was entitled to possess the requested record. The requests were generally denominated as records the court presumed the sheriff was entitled to possess or records the court thought the sheriff might not be entitled to possess. This categorization was consistent with the second and third categories identified above.

Regarding records it presumed the sheriff was entitled to possess, the court ordered the sheriff to conduct a due and diligent investigation to determine whether such records existed and, if so, to provide them to Huff. If after a due and diligent investigation the sheriff determined he was not entitled to possess the records, the sheriff would be granted the opportunity to rebut the presumption by affidavit evidence. Such affidavit would need to include the facts necessary to support the sheriff's determination, as well as the identity and location of any other custodian of records that the sheriff believed was entitled to possess the records.

Regarding records the court thought the sheriff might not be entitled to possess, the court ordered the sheriff to conduct a due and diligent investigation to determine whether such records existed and, if so, to provide them to Huff. If the records were no longer available, the sheriff would be required to explain in writing why such records were no longer available. If the sheriff determined his office was not entitled to possess the records, the sheriff needed to report

facts supporting such determination and identify any other public custodian the sheriff believed was entitled to possess the records.

In its order, the court also addressed the requirement that Huff deposit a fee before the sheriff would provide Huff's jail records, which the sheriff had determined he could provide. The court stated that § 84-712(3)(b) and (f) authorizes a public records custodian to charge a fee that "'shall not exceed the actual added cost of making the copies available'" and to require a deposit if the cost is estimated to exceed $50. The court concluded that "[t]his provision authorized the deposit requested by the sheriff." The court noted, however, that Huff was indigent and had been permitted to proceed in forma pauperis in this action.

The court acknowledged that neither the public records statutes nor the in forma pauperis statutes explicitly supported a waiver of the fees chargeable under § 84-712. Nevertheless, the court determined that in enacting the public records statutes, "the [L]egislature intended to make all public records readily available to the public," and the court "infer[red that] the [L]egislature intended to avoid the imposition of copying expenses as [a] means to avoid the obligation to produce public records."

The court noted that as an inmate, Huff did not have the ability to examine public records in situ, and that therefore, his only access to records would be by obtaining copies; the court further noted that as a prisoner, Huff had little financial resources to pay the costs. Therefore, in order to fulfill what it determined to be the Legislature's intent and the court's authority under § 84-712.03(2) "to grant such other equitable relief as may be proper," the court determined that fees were subject to waiver in an appropriate circumstance. The court determined that Huff's requests were not frivolous, and it therefore concluded that the fees associated with his requests were subject to waiver and should in fact be waived. The court applied this holding to both the $750 deposit that the sheriff had required

and any fees that might be chargeable in connection with the additional production of records ordered by the court.

In conclusion, the court ordered that the sheriff would have 30 days from the date of the order

> to conduct the investigations and inquiries required, to deliver to Huff the records required by this order or state under oath he is not entitled to possess such records and the identity and location of any custodian of the public body he believes is entitled to possess such records and to contemporaneously file with the court a report of his responses to the requests and his responses to this writ.

Brown appeals the order of the district court.

## ASSIGNMENTS OF ERROR

Brown claims, renumbered and restated, that the court erred when it (1) substituted Brown for Kapperman as the defendant; (2) found that the sheriff had a duty to provide certain records even after Huff failed to pay a fee or timely respond as required under § 84-712(4); (3) received exhibit 3 into evidence and ordered a writ of mandamus without admitting any other evidence; (4) ordered the sheriff (a) to provide records without the payment of an authorized fee, (b) to provide records that were not in his possession, and (c) to conduct an investigation and to report on other requested records by identifying and locating the custodian of such records; and (5) waived fees and costs authorized under § 84-712 and ordered the sheriff to produce records without the payment of such fees and costs.

## STANDARDS OF REVIEW

[1,2] Mandamus is a law action, and it is an extraordinary remedy, not a writ of right. *Aksamit Resource Mgmt. v. Nebraska Pub. Power Dist.*, 299 Neb. 114, 907 N.W.2d 301 (2018). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and we will not disturb those findings unless they are clearly erroneous. *Id*. Whether to grant a writ of mandamus is within the trial court's discretion. *Id*.

ANALYSIS

*Petition for Writ of Mandamus and Request for Public
Records Were Directed at Person Holding Office
of Sheriff, and Therefore, Court Did Not Err
When It Allowed Substitution of Brown's
Name for Kapperman's.*

Brown first claims that the district court erred when it substituted his name as sheriff for that of Kapperman as the defendant in this action. We determine that the district court fairly interpreted Huff's records request and petition for a writ of mandamus as being directed at the office of the Furnas County sheriff as the custodian of public records and that therefore, the court did not err when it allowed the caption for this action to be updated to reflect the name of the current holder of that office.

The district court noted that "Huff's request for the production of public records was directed to the office of the sheriff of Furnas County . . . not to the individual who occupied the office at the time of the delivery of the request." We agree with the district court's interpretation of the request and of Huff's petition for a writ of mandamus as seeking compliance with that request by the sheriff. A request under the public records statutes is directed to the custodian of the records being sought, and although a request is made to the specific person holding the position of custodian, in substance it is inherently directed at the holder of the office that acts as the custodian of the records.

[3] We note that Neb. Rev. Stat. § 23-1709 (Reissue 2012) provides in relevant part that "[w]hen a sheriff goes out of office he or she shall deliver to his or her successor all books and papers pertaining to the office . . . ." We read the requirement under § 23-1709 that a sheriff leaving office deliver "all books and papers" to his or her successor to include public records for which the sheriff is custodian. We further note that with regard to the naming of parties to an action, Neb. Rev. Stat. § 25-322 (Reissue 2016) provides in relevant part:

> An action does not abate by . . . the transfer of any interest therein during its pendency, if the cause of action survives or continues. . . . In case of [a] transfer of interest, the action may be continued in the name of the original party or the court may allow the person to whom the transfer is made to be substituted in the action.

Reading these statutes together, we determine that Huff's action for mandamus to enforce his public records request directed to the holder of the office of sheriff did not abate as a result of the transfer of public records of the sheriff's office from Kapperman as custodian to Brown as custodian. The duty, if any, to provide public records stays with the office of the records' custodian and is transferred to the new holder of the office. We therefore conclude that the district court did not err when it allowed the substitution of Brown's name for Kapperman's name as custodian of the public records at issue in this action.

*In Order for Court to Issue Mandamus, Huff
Needed to Show That Sheriff Had Clear
Duty to Provide Requested Records.*

The remaining issues on appeal deal with Huff's requests for public records and whether he was entitled to a writ of mandamus requiring the sheriff to provide the requested records. We therefore review standards relating to mandamus in the context of a public records request.

[4,5] A person denied access to a public record may file for speedy relief by a writ of mandamus under § 84-712.03. *Aksamit Resource Mgmt. v. Neb. Pub. Power Dist.*, 299 Neb. 114, 907 N.W.2d 301 (2018). We have stated that a party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712.

*Aksamit Resource Mgmt., supra*. Where a suit is filed under
§ 84-712.03, the Legislature has imposed upon the public
body the burden to "'sustain its action.'" *Aksamit Resource
Mgmt.*, 299 Neb. at 123, 907 N.W.2d at 308. If the public
body holding the record wishes to oppose the issuance of a
writ of mandamus, the public body must show, by clear and
conclusive evidence, that the public record at issue is exempt
from the disclosure requirement under one of the exceptions
provided by § 84-712.05 or § 84-712.08. See *Aksamit Resource
Mgmt., supra*.

In the present case, the only documents that the sheriff
asserted were exempt from disclosure under a statutory excep-
tion were medical records that the sheriff asserted to be exempt
under § 84-712.05(2). The court agreed that such records were
exempt from disclosure, and it therefore denied mandamus
as to those records. Huff did not appeal or cross-appeal to
assign error to the court's denial of mandamus regarding these
records; therefore, the court's denial of mandamus as to those
records is affirmed and whether the records are exempt from
disclosure is not at issue in this appeal.

The issues on appeal involve records for which the court
granted a writ of mandamus. In his response to Huff's request,
Kapperman did not assert, and Brown does not argue on
appeal, that these records were exempt from disclosure pursu-
ant to a statutory exception. Instead, in his response to Huff's
request, Kapperman either (1) asserted that no responsive
records existed or (2) acknowledged that the records existed
but required the deposit of a fee before the records would be
provided. The standard set forth above placing a burden on the
public body to show by clear and convincing evidence that a
record is exempt does not apply when the public body's reason
for denying a records request is not that the record is exempt
from disclosure under a statutory exception. Instead, we have
acknowledged:

> Requiring the public body to demonstrate that an
> exception applies to the disclosure of a particular public

record does not, however, change the fact that it is the
initial responsibility of the relator to demonstrate that the
record in question is a public record within the meaning
of § 84-712.01. Under § 84-712.03, a writ may be sought
by "[a]ny person denied any rights granted by sections
84-712 to 84-712.03 . . . ." In order to establish stand-
ing and jurisdiction, therefore, it must be shown that the
party seeking mandamus has been denied rights under
§ 84-712. A necessary component of this showing is that
the party was seeking a record that is a "public record"
within the meaning of § 84-712.01.

*State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255
Neb. 784, 789-90, 587 N.W.2d 100, 105 (1998).

[6,7] The requesting party's initial responsibility to demon-
strate a prima facie claim for a writ of mandamus requiring
release of public records must be understood in the context of
general requirements for mandamus. Mandamus is a law action
and is defined as an extraordinary remedy, not a writ of right,
issued to compel the performance of a purely ministerial act
or duty, imposed by law upon an inferior tribunal, corporation,
board, or person, where (1) the relator has a clear right to the
relief sought, (2) there is a corresponding clear duty existing
on the part of the respondent to perform the act, and (3) there
is no other plain and adequate remedy available in the ordinary
court of law. *State ex rel. Rhiley v. Nebraska State Patrol*,
301 Neb. 241, 917 N.W.2d 903 (2018). Therefore, under
§ 84-712.03(1)(a), the requesting party's initial responsibility
includes demonstrating that the requested record is a public
record that he or she has a clear right to access under the
public records statutes and that the public body or custodian
against whom mandamus is sought has a clear duty to provide
such public records.

As noted above, the district court denied mandamus with
regard to medical records the sheriff asserted were exempt
from disclosure. The court also denied mandamus with regard
to records regarding county officials other than the county

sheriff. Because Huff does not appeal or cross-appeal that rul-
ing, the denial of mandamus as to those records is affirmed.

*With Regard to Records for Which Sheriff Required*
*a Deposit of Fees, Huff Failed to Show He Timely*
*Responded to the Request and Therefore Failed*
*to Show the Sheriff Had a Clear Duty to*
*Provide Such Records.*

As we have indicated above, the remaining issues on appeal
relate to records with respect to which the court granted man-
damus and that the sheriff asserts he has no duty to provide
either because no such record existed or because the records
existed but Huff did not timely respond to the sheriff's request
for a deposit of fees before the records would be provided.

We first address the records that in his response Kapperman
acknowledged were in his possession but for which he required
a deposit of fees before the request could be fulfilled. We
determine that because Huff did not timely respond as required
under § 84-712(4), the sheriff did not have a clear duty to pro-
vide the records and the court erred when it granted mandamus
as to these records.

In his response to Huff's request, Kapperman asserted that
most of the requested records did not exist but he acknowl-
edged that jail records relating to Huff as sought in request
3 existed and were public records that could be provided to
Huff. However, Kapperman estimated that "the inspection and
copying of records would cost approximately $750.00," and
he therefore required from Huff "a deposit of $750.00 before
fulfilling such a request." We note that § 84-712(3)(b) provides
in part that "the custodian of a public record may charge a fee
for providing copies of such public record . . . , which fee shall
not exceed the actual added cost of making the copies avail-
able." Also, § 84-712(3)(f), which was cited by Kapperman in
his response, provides that "[i]f copies requested in accordance
with . . . this section are estimated by the custodian of such
public records to cost more than fifty dollars, the custodian

may require the requester to furnish a deposit prior to fulfilling such request."

Brown claims on appeal that the district court erred when it found that the sheriff had a duty to provide these records even after Huff failed to respond to Kapperman's request for a deposit before providing the records. Brown cites § 84-712(4), which provides in relevant part that after the custodian has provided to the requester an estimate of the expected cost of the copies:

The requester shall have ten business days to review the estimated costs, including any special service charge, and request the custodian to fulfill the original request, negotiate with the custodian to narrow or simplify the request, or withdraw the request. If the requester does not respond to the custodian within ten business days, the custodian shall not proceed to fulfill the request.

Kapperman's response to Huff's request was dated October 2, 2018. Huff does not assert, and there is nothing in the record that indicates, that within 10 business days thereafter, Huff either requested Kapperman to fulfill the original request, attempted to negotiate with Kapperman to narrow or simplify the request, or withdrew his request. Instead, on October 15, Huff filed a petition for a writ of mandamus in the district court. Brown argues that because Huff did not respond within 10 business days in one of the ways set forth in § 84-712(4), and because the statute provides that in such circumstance, "the custodian shall not proceed to fulfill the request," the sheriff no longer had a duty to fulfill the request. We agree with the sheriff.

Huff attached to his petition copies of his request and Kapperman's response. Huff did not assert in his petition that he had responded within 10 business days to Kapperman's request for a deposit of fees; nor did he attach a copy of any such response. The only additional evidence Huff offered at the hearing was his affidavit, in which he made no assertion that he had timely responded. Without a response, under

§ 84-712(4), Kapperman was no longer under a duty to fulfill the request for jail records. Therefore, we determine that with respect to these records, Huff failed his initial responsibility to demonstrate that he had been denied access to the public record as guaranteed by § 84-712, because he failed to demonstrate that the sheriff had a clear duty under § 84-712 to fulfill the request. See *Russell v. Clarke*, 15 Neb. App. 221, 724 N.W.2d 840 (2006) (affirming denial of petition for writ of mandamus where evidence established that there were no public records maintained by custodian other than those of which copies were provided or of which custodian offered to provide copies upon payment of reasonable expense of copying, and requester failed to adduce evidence to contrary).

We note in connection with this request that in his petition, Huff asserted that Kapperman was "charging [an] amount more than what it would cost to copy these records." However, Huff did not assert a factual basis to support his claim of unreasonableness; nor did he present evidence to show that the $750 requested by Kapperman exceeded the reasonable expense of copying. There was no showing indicating the volume of documents requested and therefore no way to determine whether $750 was a reasonable cost, and in addition, the district court made no finding that the requested fee was excessive or unreasonable. Instead, in its order, the court stated that § 84-712(3)(f) "authorized the deposit requested by the sheriff." Although the court thereafter determined that the fee should be waived, such determination was based on Huff's inability to pay rather than the reasonableness of the fee. Because the sheriff has been relieved of his duty, if any, to provide records encompassed by request 3, we do not comment on the court's ruling that the fees provided for in § 84-712(3)(f) can be waived. Compare 5 U.S.C. § 552(a)(4)(A) (2018) (providing for statutory waiver of fee).

On the record before the district court, Huff did not show a clear duty on the part of the sheriff as custodian of the jail records to provide the records which the sheriff offered to

provide upon a deposit of fees. We therefore conclude that the court abused its discretion when it granted mandamus as to those records.

*Huff Failed to Demonstrate That Sheriff Had*
*a Clear Duty to Provide Records That*
*Sheriff Asserted Did Not Exist.*

Regarding the majority of the records requested by Huff, the sheriff responded that no responsive records existed. The district court granted mandamus with regard to those requests encompassed by this response under the reasoning that such records were records "'of or belonging to'" the sheriff because the sheriff was "'entitled to possess'" the records. We determine that the court misapplied this court's precedent in reaching that conclusion, and we conclude that Huff failed to establish as a prima face case that the requested records were records that the sheriff had a clear duty to provide.

The record from the district court does not contain evidence to support a finding that the sheriff was the custodian of the requested records. As noted above, Huff attached to his petition Kapperman's response in which Kapperman asserted that as to most of Huff's requests, "no responsive records exist." In his pleadings and in his affidavit, Huff made generalized allegations that Kapperman was withholding records and not fulfilling his duty. But there was no other evidence to establish that the sheriff was the custodian of the requested records. In its order, the court does not explicitly find that the sheriff was being untruthful and that the requested records were actually in his possession. Instead, the court reasoned that the sheriff was required to provide the records to Huff because the sheriff was "'entitled to possess'" the records.

For purposes of the public records statutes, § 84-712.01(1) defines "public records" to "include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board,

bureau, commission, council, subunit, or committee of any of the foregoing." In its order in this case, the district court cited *Evertson v. City of Kimball*, 278 Neb. 1, 9, 767 N.W.2d 751, 759 (2009), in which we stated that this definition "does not require a citizen to show that a public body has actual possession of a requested record" and we liberally construed the "'of or belonging to'" language of § 84-712.01(1) to include "any documents or records that a public body is entitled to possess—regardless of whether the public body takes possession." We stated that "[t]he public's right of access should not depend on where the requested records are physically located." *Id.* The district court in its order interpreted *Evertson* "to require the custodian who receives a public records request to examine each of the requests to determine whether, as a custodian in the public body to which the request is directed, he or she is 'entitled to possess the document' requested." The court then categorized the records requested by Huff as those that the sheriff "presumptively appears to be entitled to possess" and those "which it appears the sheriff may not be entitled to possess." As to each category, the court required the sheriff to investigate whether he was entitled to possess the requested documents and either provide the documents, explain why he could not possess them, or identify any other custodian the sheriff believed to be entitled to possess the records.

We determine that the district court read *Evertson* too broadly. In *Evertson*, the city's mayor had commissioned an investigation by a private entity and two citizens requested from the city a written report that was in the possession of the private entity. Although we ultimately concluded that the record was exempt from production based on a statutory exception, as a preliminary step we determined that the report was a "public record" under § 84-712.01 even though the city had declined to take possession. In reaching that conclusion, we set forth the language relied on by the district court to the effect that public records include documents the public body is entitled to possess.

However, *Evertson* must be understood in the context of a request for documents in the possession of a private entity. In *Evertson*, we set forth tests for determining whether records in the possession of a private party are public records subject to disclosure, and such tests generally focused on the public body's delegation to a private entity of its authority to perform a government function and the preparation of the records as part of such delegation of authority. Thus, it was in the context involving the public body's access to documents in the possession of a private entity that the "entitled to possess" language in *Evertson*, 278 Neb. at 9, 767 N.W.2d at 759, emerged.

In the present case, Huff did not assert, and there is no indication from the record, that any of the documents requested by Huff were in the possession of a private entity to whom the sheriff had delegated authority to perform a function of the sheriff's office. The court made general findings that the requested records were records that the sheriff appeared to be entitled to possess; however, the court made no indication whether it thought that, contrary to the response that no responsive records existed, the records were actually in the sheriff's possession or whether it thought the sheriff could obtain the records from some other unspecified custodian pursuant to some unspecified authority. Huff presented no evidence to contradict the sheriff's response or to establish that the sheriff was the custodian of the requested records.

The sheriff argued at the hearing that the records at issue were "not items that are kept by the sheriff's department" and that instead, the custodians of certain requested records may have been other county officers such as the county attorney or the county clerk. Therefore, it is possible the court may have determined that the sheriff was "entitled to possess" such records in the performance of his duties because the sheriff could request the other county officers to provide the records. See *Evertson v. City of Kimball*, 278 Neb. 1, 9, 767 N.W.2d 751, 759 (2009). But we do not think that *Evertson* should

be extended to apply to records normally in the possession of other governmental custodians. Although the sheriff may be able to request records from another county office, it does not mean they are records "of or belonging to" the sheriff; instead, they are records "of or belonging to" the other county office. See § 84-712.01.

The public records statutes are directed to "the custodian" of a requested public record, see § 84-712, and the duties imposed thereunder on a specific custodian relate only to the public records of which that specific office or person is the custodian. A specific custodian only has a clear duty under the public records statutes to provide the public records of which he or she is custodian. It is the obligation of the person requesting a record to determine the proper custodian and to make a request of that person or office.

The record of proceedings in this case is that in his response, the sheriff asserted that as to most of Huff's requests, no responsive records existed. The only evidence presented by Huff was his affidavit in which he made general allegations that the sheriff failed to comply with his requests. But there is no evidence to support a showing that the sheriff was in fact custodian of any of the records at issue, and therefore, Huff failed to make a prima facie showing that the sheriff had a clear duty under the public records statutes to provide the records. Although other county officers may have been custodians of the requested records, the public records statutes did not impose a duty on the sheriff to obtain those records on Huff's behalf.

For completeness, we note that in another request subsequent to request 3, Huff sought the criminal history records of various individuals such as jurors and attorneys. Neb. Rev. Stat. § 29-3520 (Reissue 2016) provides in part that "[c]omplete criminal history record information maintained by a criminal justice agency shall be a public record open to inspection and copying by any person during normal business hours and at such other times as may be established by

the agency maintaining the record." Further, Neb. Rev. Stat. § 29-3522 (Reissue 2016) states that if the requested criminal justice history record is not in the custody or control of the person to whom the request is made, such person shall notify the requester and state the agency, if known, which has custody or control of the record in question. In this case, the sheriff responded to this request by asserting "no responsive records exist." With respect to Huff's request for criminal histories, we read this response as being both that the sheriff did not have custody of such records and that the sheriff was not aware of any requested criminal histories that were in the custody and control of another agency. Although on this record as a whole, the sheriff has broadly addressed the concerns reflected in §§ 29-3520 and 29-3522, the better practice going forward when responding to a request for criminal history record information is an initial twofold response containing both an answer to whether the responder has custody and control of the information sought and, if not, which agency, if known, has custody or control of the record in question or an explicit statement that the responder is not aware of any criminal history in the custody of another agency.

We further note, with respect to Huff's requests for documents other than criminal histories, that the public records statutes do not include a requirement similar to that in § 29-3522 for a custodian to inform the requester of another agency that has custody or control of the record requested. Therefore, to the extent the district court's mandamus ordered the sheriff to provide such information with regard to records other than criminal histories, the sheriff had no clear duty to do so.

We conclude that the district court abused its discretion when it granted the writ of mandamus as to the records for which the sheriff has responded that no responsive records exist. Because we conclude that Huff did not establish a prima facie case that he was denied public records that the sheriff had a clear duty to provide, we reverse the portions of the

order granting mandamus. We therefore need not consider Brown's remaining assignments of error.

## CONCLUSION

We conclude that the district court did not err when it allowed Brown's name to be substituted for Kapperman's, because the present action was directed to the office of the sheriff of Furnas County. With regard to the merits of Huff's petition for a writ of mandamus, to the extent the district court denied Huff's petition in part, we affirm such denial. To the extent the district court granted the remainder of Huff's petition and issued mandamus, we conclude that Huff failed to demonstrate a prima facie case that he had been denied a request for public records that the sheriff had a clear duty to provide under § 84-712. We therefore reverse the order to the extent the court granted mandamus, and we remand the matter with directions to the district court to deny Huff's petition for a writ of mandamus in its entirety.

Affirmed in part, and in part
reversed and remanded.

Freudenberg, J., not participating.